UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ST. PAUL FIRE & MARINE
INSURANCE COMPANY

    Plaintiff,

v.

GREATWIDE LOGISTICS SERVICES, LLC,
GWTM, LLC, GREATWIDE AMERICAN TRAN-
FREIGHT, LLC, GREATWIDE CHEETAH
TRANSPORTATION, LLC, GREATWIDE
DALLAS MAVIS, LLC, and GREATWIDE
NATIONAL TRANSPORTATION SPECIALIST,
LLC,

    Defendants.
------------------------------------------------------------X

13 CV 2930

ECF CASE

C.A. NO. _____



## COMPLAINT

Plaintiff, ST. PAUL FIRE & MARINE INSURANCE COMPANY (hereinafter "St. Paul"), by and through its attorneys, Lennon, Murphy, Caulfield & Phillips, LLC as and for its Complaint against the Defendants, GREATWIDE LOGISTICS SERVICES, LLC, GWTM, LLC, GREATWIDE AMERICAN TRAN- FREIGHT, LLC, GREATWIDE CHEETAH TRANSPORTATION, LLC, GREATWIDE DALLAS MAVIS, LLC, and GREATWIDE NATIONAL TRANSPORTATION SPECIALIST (hereinafter collectively as "Greatwide Defendants"), alleges, upon information and belief, as follows:

1.     This action is brought under 28 U.S.C. § 2201 and seeks a declaration of the rights, duties and obligations of the parties with respect to a certain marine insurance policy issued by St. Paul to the Greatwide Defendants titled Policy of Marine Insurance, Policy Number OK01200076 (hereinafter "the Policy").

2. Specifically, St. Paul seeks a judgment declaring that it is not required to provide insurance coverage in respect of alleged physical damage to a cargo consisting of a disassembled C130 Hercules military transport aircraft (hereinafter "the cargo") because, *inter alia*, the Greatwide Defendants' alleged damages and/or losses are excluded from coverage by the terms of the Policy.

3. This is an admiralty and maritime claim within the meaning of 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure because this action concerns a dispute over the interpretation of a maritime contract, *i.e.*, a policy of marine insurance.

4. Alternatively, there is diversity jurisdiction within the meaning of 28 U.S.C. § 1332. St. Paul is a Connecticut corporation with a principal place of business in Hartford, Connecticut and is authorized to conduct business in New York. The Greatwide Defendants are Delaware companies with a principal place of business in Dallas, Texas. GREATWIDE AMERICAN TRAN- FREIGHT, LLC and GREATWIDE DALLAS MAVIS, LLC are registered with the New York State Department of State to conduct business in New York. The amount in controversy exceeds $75,000.

5. St. Paul issued the Policy to the Greatwide Defendants.

6. One or more of the Greatwide Defendants presented an insurance claim to St. Paul in relation to alleged physical damage to the cargo, *i.e.*, Defendants claimed that the C130's wings and horizontal stabilizer sustained physical damage during overland carriage by truck between Key West, Florida and Abbotsford, B.C.

7. Defendant GREATWIDE AMERICAN TRAN- FREIGHT, LLC is a trucker and a common carrier for hire.

8. The C130 aircraft is owned by the Canadian government. While flying exercises from U.S. Naval Air Station Key West, it suffered a fire and carried out an emergency landing.

9. A third party named Cascade Aerospace contracted with the Canadian government to repair the aircraft. Cascade Aerospace sent a team to Key West and determined that the aircraft could be repaired at its Abbotsford facility.

10. Arrangements were made through third party Federal Express to transport the C130 aircraft by truck to Abbotsford. Federal Express sub-contracted with Defendant GREATWIDE AMERICAN TRAN-FREIGHT to facilitate the transportation. Parties unknown to St. Paul disassembled the C130 aircraft prior to the carriage.

11. Defendant GREATWIDE AMERICAN TRAN-FREIGHT, acting as the carrier, issued straight bill of lading number 7034872 dated September 17, 2012 for the carriage of the C130 Hercules aircraft from Key West, FL to Abbotsford, B.C. The bill of lading listed Cascade Aerospace as the shipper and the consignee.

12. The road carriage between Key West and Abbotsford was largely uneventful. The cargo departed Key West on September 18, 2012 and arrived at Abbotsford on October 2, 2012. The cargo did not shift. The straps atop of the wings and horizontal stabilizer were neither tightened nor adjusted en route.

13. At destination, damage was noted to both wings and to the horizontal stabilizer, which had been carried on different trucks. A damage survey was performed on November 27, 2012 and concluded that the damage to the wings and horizontal stabilizer was a direct result of improper strapping by GREATWIDE AMERICAN TRAN-FREIGHT. It was GREATWIDE AMERICAN TRAN-FREIGHT who applied the strapping in Key West and secured the stow to the trucks' trailers prior to the commencement of the journey.

14. More specifically, GREATWIDE AMERICAN TRAN-FREIGHT placed four straps over the top of the wings, which it then cinched tightly to the trailer bed. The wings were damaged at every location where GREATWIDE AMERICAN TRAN-FREIGHT had applied a strap. Similar to the two wings, the horizontal stabilizer buckled at the point of each strap. There was no shipping container and/or structure to protect the horizontal stabilizer.

15. Mr. Bill Brooks was GREATWIDE AMERICAN TRAN-FREIGHT's driver. Although Mr. Brooks lacked the necessary experience and expertise about the proper method to pack and/or prepare the oversized C130 cargo for carriage, he was nonetheless the person who decided that strapping was appropriate. He was also the person who physically applied the straps. As revealed by the damage survey, the straps were unsuitable and should not have been used. Despite his requests for direction, Mr. Brooks received no assistance or instruction from Cascade Aerospace or anyone else about how to properly prepare or stow the cargo for carriage.

16. At Key West, Mr. Brooks asked if he was securing the plane properly. In response, he was told that "the aircraft was already damaged, having been involved in a hard landing." Upon hearing this Mr. Brooks was no longer concerned about the correctness of the preparation of the cargo for carriage and decided not to complete his walk-around inspection.

17. The damage survey concluded that: "there is no doubt that the damage inflicted to the aircraft components was due to improper securing of the components on the subject trailers…no one provided supervision for Greatwide during the loading of the trailers carrying the wings and horizontal stabilizer."

18. Policy Clause 32 (Insufficiency of Packing) specifically reserves for the insurer a defense where the insured improperly packed or prepared the cargo such that it could not endure the ordinary hazards of the carriage. In this case, Greatwide Defendants improperly stowed

and/or secured the cargo onto the trucks' trailers prior to the commencement of journey. This insufficiency of stowage was occasioned with the privity and/or knowledge of the Greatwide Defendants.

19. Policy Clause 32 provides as follows:

32. INSUFFICIENCY OF PACKING:

32.1  In the event of a claim being made for loss or damage which is alleged to be caused by insufficiency of or unsuitability of packing or preparation of the insured goods and/or merchandise and/or property, This Insurer hereby agrees that it will not assert such alleged insufficiency or unsuitability as a defense against the claim in any case where the packing or preparation was carried out by a party other than The Insured making claim and the insufficiency or unsuitability arose without The Insured's privity or knowledge.

32.2  For the purpose of this Clause, "packing" shall be deemed to include stowage in a container, trailer or rail car.

20. St. Paul has denied the Greatwide Defendants' insurance claim because *inter alia* it is entitled to the insufficiency of packing defense in these circumstances where GREATWIDE TRAN-FREIGHT improperly carried out the stowage of the cargo onto the trailers and it was that insufficiency of stowage that proximately caused the cargo damage.

21. Greatwide Defendants subsequently responded through their broker, Marsh, that they disagreed with St. Paul's coverage position.

22. An actual and justiciable controversy exists between St. Paul and Greatwide Defendants concerning St. Paul's determination that there is no coverage for the loss pursuant to the terms of the Policy.

23. By reason of the foregoing, St. Paul is entitled to a declaratory judgment providing that it has no obligation to provide insurance coverage pursuant to the Policy's terms and conditions, including a declaration that there is no coverage pursuant to Clause 32

for the damages and/or losses to the cargo which was the result of improper strapping and/or unsuitability of stowage.

**WHEREFORE,** Plaintiff, ST. PAUL FIRE & MARINE INSURANCE COMPANY, seeks a judgment declaring that it has no obligation to provide insurance coverage with respect to alleged cargo damages and further prays that the judgment grant it the costs and expenses of this action and such other relief as this Court may deem just and proper.

Dated: April 30, 2013

Attorney for Plaintiff
ST. PAUL FIRE & MARINE INSURANCE COMPANY,

By: _____
Charles E. Murphy
Anne C. LeVasseur
LENNON, MURPHY, CAULFIELD & PHILLIPS, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050-phone
(212) 490-6070-fax
cem@lmcplegal.com
acl@lmcplegal.com